UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Trustees of the ST. PAUL ELECTRICAL CONSTRUCTION INDUSTRY FRINGE BENEFIT FUNDS, | Civil No. 06-2334 (PJS/JJG) |
| Plaintiffs, | ORDER ON MOTION FOR DEFAULT JUDGMENT |
| v. | |
| MARTENS ELECTRIC COMPANY, | |
| Defendant. | |

---

Ruth S. Marcott, FELHABER, LARSON, FENLON & VOGT, P.A., 220 South Sixth Street, Suite 2200, Minneapolis, MN 55402, for plaintiffs.

This matter is before the Court on the motion of plaintiffs Trustees of the St. Paul Electrical Construction Industry Fringe Benefit Funds ("the Fund") for entry of default judgment against defendant Martens Electric Company ("Martens Electric").

BACKGROUND

On July 18, 2005, Martens Electric became a party to a multi-employer collective bargaining agreement ("CBA") that had been negotiated by the St. Paul Chapter of the National Electrical Contractors Association with the International Brotherhood of Electrical Workers Union No. 110, AFL-CIO. Callies Aff. Ex. B. Under the CBA, Martens Electric is required to make payments to the Fund on the fifteenth of every month, covering the hours worked by union members during the previous month. CBA art. IV § 1(b).

On June 8, 2006, the Fund filed this action against Martens Electric to recover delinquent contributions for hours worked by union members during April 2006. Those contributions were due on May 15, 2006, but Martens Electric had not made the contributions by the time the complaint was filed.

In the complaint, the Fund requested a judgment against Martens Electric for $10,772.02, representing the contributions that were due on May 15. The Fund also requested liquidated damages in the amount of $2,154.40, attorney's fees and costs, and other equitable relief. The Fund's request for liquidated damages and other relief was made pursuant to Section 13(c) of Article IV of the CBA ("Section 13(c)"), which provides that when an employer in Martens Electric's position fails to make contributions required by the CBA, and the Fund brings suit to recover those contributions, the Fund is entitled to recover:

1. The unpaid contributions past due; plus

2. Interest on such unpaid contributions determined at the rate then being charged for delinquent payments of federal income tax pursuant to Internal Revenue Code Section 6621, calculated from the original Due Date thereof until the date of actual payment; plus

3. Liquidated damages equal to the greater of: (A) the amount of interest charged pursuant to subsection 13(c)(2), above, or (B) 20% of the unpaid contributions; plus

4. Reasonable attorneys [sic] fees and the cost of the action; plus

5. Such other legal or equitable relief as the court may deem appropriate.

CBA art. IV § 13(c). Almost identical language appears in the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1132(g)(2).

The summons and complaint were served on Martens Electric on June 19, 2006. Marcott Aff. ¶ 2. Martens Electric did not answer the complaint or otherwise make an appearance in this

matter. The company did, however, pay the $10,772.02 in past-due contributions to the Fund. The Fund nevertheless persists in this litigation, seeking the liquidated damages and other relief authorized by Section 13(c).

On July 21, 2006, the Fund applied to the clerk of court for entry of default. In so doing, the Fund followed a procedural requirement that is often overlooked by attorneys. Before a party can seek a default *judgment* from the Court, the party must first obtain a *default* from the clerk. *See* Fed. R. Civ. P. 55(a); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2682 (1998) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)."). In this case, the clerk entered a default on July 26, 2006.

On September 8, 2006, the Fund moved for entry of a default judgment against Martens Electric. That motion is not, however, limited to the relief to which the Fund is entitled by virtue of Martens Electric's delay in making the April 2006 contributions. According to affidavits filed by the Fund, Martens Electric was also tardy in making the May 2006, June 2006, July 2006, August 2006, and September 2006 contributions. The Fund seeks liquidated damages in the amount of $2,154.40 for the April delinquency, $5,817.41 for the May, June, and July delinquencies (Callies Aff. ¶ 5, Exs. D-F), and $3,685.89 for the August and September delinquencies (Suppl. Callies Aff. ¶ 4).

The Fund also seeks an order forcing Martens Electric to reimburse it for the costs and attorney's fees incurred in pursuing this relief. Moreover, the Fund asks the Court to order Martens Electric to post security consisting of an advance deposit equal to twice the "estimated average contributions" of the employer. Callies Aff. ¶ 9; CBA art. IV § 13(e). The plan

administrator calculates the "estimated average contribution" of Martens Electric as $10,801.00, Callies Aff. ¶ 9, and therefore the Fund moves the Court to order Martens Electric to post double that amount (or $21,602.00) as security, *id.*

## ANALYSIS

The Fund is clearly entitled to a default judgment with respect to the relief it seeks on account of Martens Electric's failure to make the April 2006 contributions.

Rule 55(a) of the Federal Rules of Civil Procedure provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The Fund has sought "a judgment for affirmative relief" against Martens Electric. As noted, Martens Electric has "failed to plead or otherwise respond." And thus the clerk properly entered a default against Martens Electric under Rule 55(a).

Before obtaining a default judgment against Martens Electric under Rule 55(b), the Fund must "prove its entitlement to the requested damages," *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002), and this Court "must conduct an inquiry to ascertain the amount of damages with reasonable certainty," *Kingvision Pay-Per-View, Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 513 (E.D.N.Y. 2006). Through the affidavits and other evidence that it has submitted, the Fund has established to the satisfaction of the Court that, under the terms of the CBA and under ERISA, the Fund is entitled to recover liquidated damages, as well as costs and attorney's fees, in connection with the failure of Martens Electric to make the April 2006 contributions before this lawsuit was filed. *See* CBA art. IV § 13(c)(1)-(5); 29 U.S.C. § 1132(g); *Carpenter & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 478 (8th Cir. 1988).

The fact that Martens Electric paid the April 2006 contributions soon after this suit was filed does not preclude the Fund from recovering liquidated damages.  The amount of liquidated damages owed is set at the time the complaint is filed and is not reduced by subsequent payments.  *See Northwest Adm'r., Inc. v. Albertson's Inc.*, 104 F.3d 253, 258 (9th Cir. 1996); *Gittleman Corp.*, 857 F.2d at 478.  Liquidated damages and attorney's fees are available "'notwithstanding the defendant's post-suit, pre-judgment payment of the delinquent contributions themselves.'" *Northwest Adm'r.*, 104 F.3d at 258 (quoting *Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co.*, 767 F.2d 1170, 1175 (5th Cir. 1985)).  Thus, the Fund is entitled to liquidated damages in the amount of $2,154.40 because Martens Electric failed to make the April 2006 contributions before this action was filed.  In addition, the Fund is entitled to recover the reasonable costs and attorney's fees that it incurred in order to recover these liquidated damages.

As noted, the Fund also seeks to recover liquidated damages for Martens Electric's failure to timely make the May 2006, June 2006, July 2006, August 2006, and September 2006 contributions.  But the Fund is proceeding here under a complaint that was filed on June 8, 2006.  That complaint has never been amended, even though the Fund has the right to amend the complaint once as a matter of course, and even though this Court would "freely" grant permission to make additional amendments.  *See* Fed. R. Civ. P. 15(a).

At the time the complaint was filed, only the April 2006 contributions (due May 15, 2006) were overdue.  None of the other contributions — not even the May 2006 contributions (due June 15, 2006) — had yet come due.  Martens Electric decided not to defend a complaint filed in June 2006 seeking to recover for contributions due in May 2006.  There would be

something troubling about treating a failure to defend such a complaint as providing the basis for entering a default judgment for the tardy payment of, say, the September 2006 contributions. Martens Electric had no obligation to make September 2006 contributions unless and until a union member actually did some work in September 2006; the amount of Martens Electric's debt could not be known before October 1, 2006 (after all of the September time had been logged); and Martens Electric was not required to pay that debt until October 15, 2006.  Under these circumstances, Martens Electric did not have fair notice that a failure to defend a complaint filed in June 2006 about a debt due in May 2006 would lead to a default judgment on a debt whose existence did not arise, and whose amount could not be calculated, until months later.

True, the Fund does assert in its complaint that "Martens will continue to be delinquent for contributions subsequent to the April, 2006 contributions," Compl. ¶ 17, and requests that judgment be entered against Martens Electric "for amounts due related to delinquent contributions accruing after April, 2006, including the delinquency amount, interest and liquidated damages," Compl. ¶ 24(4).  But these are predictions, not claims.  If the Fund wanted to recover for payments missed after the complaint was filed, it should have amended the complaint and served the amended complaint on Martens Electric.  In that way, Martens Electric would have known precisely what the Fund claimed it was owed, and Martens Electric could have made an informed decision about whether to file a responsive pleading.  The Fund has not cited any authority suggesting that a default judgment can be entered against a defendant under these circumstances.  Without such authority, this Court is unwilling to enter a default judgment except with respect to the debt that was owed at the time the complaint was filed and that was specifically described in the complaint.

This conclusion is strengthened by ERISA. The Eighth Circuit has held that contributions are not "unpaid" for purposes of 29 U.S.C. § 1132(g) — and thus that an obligation to pay liquidated damages does not arise — unless the contributions are both due and unpaid on the date that the lawsuit is filed. *See Gittleman Corp.*, 857 F.2d at 478 ("[T]he term 'unpaid contributions' has been interpreted to mean contributions unpaid at the time suit was filed, rather than contributions which were delinquent for some time but which were paid up before suit was filed."). As noted, the liquidated damages clause of the CBA is virtually identical to the liquidated damages provision of ERISA. The May 2006, June 2006, July 2006, August 2006, and September 2006 contributions were not due at the time that the complaint in this action was filed. It therefore appears that, for purposes of this litigation, those contributions are not "unpaid" and do not give rise to liability for liquidated damages (or for costs and attorney's fees).

Finally, the Fund argues that ordering Martens Electric to make a security deposit is necessary because the company is a "habitually delinquent" employer for purposes of Section 13(f) of Article IV of the CBA. That section defines "habitual delinquency" as any employer "delinquent twice or more within a twelve-month period." CBA art. IV § 13(f)(1). As already noted, though, at the time this complaint was filed, Martens Electric was not a "habitually delinquent" employer; it had missed only one payment. Before the Fund can receive a default judgment ordering Martens Electric to pay such a security deposit, it needs to amend its complaint in this matter or file a new complaint against Martens Electric and give the company fair notice of the consequences of a default.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Fund's motion for default judgment [Docket No. 7] is GRANTED in part and DENIED in part as follows:

1. The Fund's motion is GRANTED insofar as it seeks liquidated damages in the amount of $2,154.40 for Martens Electric's failure to make the April 2006 contributions in a timely manner.

2. The Fund's motion is also GRANTED insofar as it seeks to recover the reasonable costs and attorney's fees that it incurred in taking legal action to recover liquidated damages for Martens Electric's failure to make the April 2006 contributions in a timely manner.  The Fund should submit a revised itemization of costs and attorney's fees to this Court within 30 days after entry of this Order.

3. The Fund's motion is DENIED in all other respects.


Dated:  November 28, 2006               s/Patrick J. Schiltz
                                        Patrick J. Schiltz
                                        United States District Judge